**STATE BOARD OF CHIROPRACTIC EXAMINERS, Appellant,**

**v.**

**David C. CLARK, D.C., Respondent.**

**No. WD 37718.**

Missouri Court of Appeals,
Western District.

July 22, 1986.

**622**

William L. Webster, Atty. Gen. and Sara Rittman, Asst. Atty. Gen., Jefferson City, for appellant.

Roger W. Calton and Judith Emick Du-Chateau, Independence, for respondent.

Before TURNAGE, P.J., and SHAN-GLER and MANFORD, JJ.

MANFORD, Judge.

This is a disciplinary action against a licensee pursuant to § 331.060, RSMo Supp. 1983. The Administrative Hearing Commission dismissed said cause. The circuit court entered its judgment affirming the Commission's decision and this appeal followed. The judgment is affirmed.

Appellant presents two points which, in summary, charge the trial court erred in affirming the decision of the Administrative Hearing Commission because (1) the evidence was sufficient to establish that respondent's conduct constituted the practice of medicine, and (2) the evidence was sufficient to establish that he engaged in fraud, deception or misrepresentation in his practice.

Appellant filed a formal complaint against respondent, alleging that certain activities of respondent were beyond the practice of Chiropratic and that said activities were within the practice of medicine, physical therapy and cosmetology. In addition, appellant alleged that respondent had engaged in fraud, deception, or misrepresentation to the public in the practice of chiropractic by advertising said activities.

Appellant's evidence consisted of the deposition of respondent, a copy of the advertisement, and a "Talk Paper" issued by the Food and Drug Administration. Respondent's evidence consisted of his own testimony, minutes of the Board of Chiropractic Examiners, and the deposition of Kay Sale, Executive Director of the Board of Chiropractic Examiners.

The complaint filed by appellant, and indeed the entire proceedings herein, deal directly with respondent's use of and the advertisement of the use of a device called a helium neon laser. This device concentrates a beam of light and when directed toward human skin, produces no perceptible hot or cold sensation. The laser beam was directed to certain points of the human body described as acupuncture points. According to the evidence, the human body has twelve energy channels, along which the acupuncture points are located. As described, the laser makes no puncture of the skin but causes the light beam to enter the skin just below the surface. This procedure was described as Meridian Therapy.

Respondent made use of the laser in such manner as to effect a change in *musculture* and to *tonify* the muscles. The laser and method were used to perform nonsurgical face lifts, habit control, and bust rejuvenation. The habit control was the smoking habit. Bust rejuvenation was aimed at increasing the female breast size, but respondent testified that he performed the same only once and that was upon a former employee who volunteered herself to the procedure. Respondent testified that he was not satisfied with the results and abandoned the procedure after the initial effort. Concerning the habit control, respondent testified as to mixed results in its success and that he later abandoned that procedure. He further described the use of the laser regarding face lifts.

Throughout the evidence, respondent introduced, through his testimony, uncontradicted claims and descriptions of the use of the laser in conjunction with the manipulation of the patient's body by hand and that such use of the laser was a *reflex-type treatment of acupressure.*

Through respondent's testimony, it was disclosed that the use of the laser in conjunction with special manipulation was a reflex-type treatment of acupressure points and that such procedures are taught and approved by Missouri Chiropractic colleges. Respondent further testified that such procedures are within sound principles of chiropractic and in his opinion, fully within the scope of chiropractic practice.

The evidence revealed that respondent placed an advertisement in the Yellow Pages, the pertinent part of which read:

* Specializing in chronic health problems

* Non-force adjusting procedures

* Laser bio-stimulation (Non-surgical face lift, bust rejuvenation, habit control)

* We also offer health care plans designed to insure the health of the entire family at a price you can afford.

Also in evidence was the fact that 4 CSR 70–2.030 was in effect. That state regulation reads:

4 CSR 70–2.030 Adjunctive Procedures
*PURPOSE: This rule outlines adjunctive procedures that may be used by doctors of chiropractic.*
(1) Those adjunctive chiropractic procedures presently approved by the board include, but are not limited to:
(A) Heat and heat producing devices;
(B) Ice and cooling packs;
(C) Extension therapy; or
(D) Therapeutic exercise, muscle therapy, reflex techniques, postural and structural supports.

Appellant initiated these proceedings under and pursuant to Chapter 331, RSMo 1978 et seq. The complaint alleged that the use of the laser by respondent, which in the complaint, the advertisement, and the evidence was referred to as "laser bio-stimulation", was outside the scope of the practice of chiropractic as defined by § 331.010, RSMo Supp. 1982. In addition, the complaint alleged that such practice by respondent was in fact within the practice of medicine as defined within § 334.010, RSMo 1978.

Section 331.010, RSMo Supp. 1982 reads:
**331.010. Definitions.**
1. The "practice of chiropractic" is defined as the science and art of examination, diagnosis, adjustment, manipulation and treatment of malpositioned articulations and structures of the body. The adjustment, manipulation, or treatment shall be directed toward restoring and maintaining the normal neuromuscular and musculoskeletal function and health. It shall not include the use of operative surgery, obstetrics, osteopathy, podiatry, nor the administration or prescribing of any drug or medicine nor the practice of medicine. The practice of chiropractic is declared not to be the practice of medicine and operative surgery or osteopathy within the meaning of chapter 334, RSMo, and not subject to the provisions of the chapter.

2. A licensed chiropractor may practice chiropractic as defined in subsection 1 of this section by those methods commonly taught in any chiropractic college recognized and approved by the board.
3. Chiropractors may advise and instruct patients in all matters pertaining to hygiene, nutrition, and sanitary measures as taught in any chiropractic college recognized and approved by the board.

Section 334.010, RSMo 1978 reads:
**334.010. Unauthorized practice of medicine and surgery, prohibited**—It shall be unlawful for any person not now a registered physician within the meaning of the law to practice medicine or surgery in any of its departments, or to profess to cure and attempt to treat the sick and others afflicted with bodily or mental infirmities, or engage in the practice of midwifery in this state, except as herein provided.

Further, appellant charged that respondent's practice was within the practice of cosmetology, as defined in § 329.020, RSMo 1978, and the practice of physical therapy, as defined by § 334.500(3), RSMo 1978. Those sections read:
**329.020. Classification of practitioners**
The following classifications of practices shall be adopted and understood to define practitioners within the meaning of this chapter:
(1) Class A—Any person who engages for compensation in any one or any combination of the following practices, to wit: Arranging, dressing, curling, singeing, waving, permanent waving, cleansing, cutting, bleaching, tinting, coloring or similar work upon the hair of any person by any means shall be construed to be practicing the occupation of a hairdresser. Any person who with hands or mechanical or electrical apparatuses or appliances, or by the use of cosmetic preparations, antiseptics, tonics, lotions or creams engages for compensation in any one or any combination of the following practices, to wit: Massaging, cleaning, stimulating, manipulating, exercis-

ing, beautifying or similar work, upon the scalp, face, neck, arms, or bust or removing superfluous hair by means other than electricity about the body of any person shall be construed to be practicing the occupation of a cosmetologist or cosmetician;

(2) Class B—Any person who engages for compensation in the manicuring of nails shall be construed to be practicing the occupation of a manicurist.

## 334.500. Definitions

As used in sections 334.500 to 334.620

\* \* \* \* \* \*

(3) "Professional physical therapy" means the specialized treatment of a human being by the use of exercise, massage, heat or cold, air, light, water, electricity, or sound, for the purpose of correcting or alleviating any physical or mental condition or preventing the development of any physical or mental disability, or the performance of tests of neuromuscular function as an aid to the diagnosis or treatment of any human condition, but does not include the use of surgery or obstetrics nor the administration, prescribing or dispensing of any drug or medicine, X-radiation, radioactive substance, diagnostic X-ray, electrocautery or electrosurgery.

The complaint then charged that such practice by appellant was both an illegal and criminal act, as defined by § 334.250, RSMo Supp. 1982, § 329.250, RSMo Supp. 1982, and § 334.610, RSMo Supp. 1982, all of which read:

## 334.250. Unlawful practice, fraudulent filing of license or identification, penalties.

1. Any person who violates section 334.010 shall, upon conviction, be adjudged guilty of a class A misdemeanor for each and every offense; and treating each patient is considered a separate offense.

2. Any person filing or attempting to file as his own a license of another, or forged affidavit of identification, shall be guilty of a class C felony and upon conviction thereof shall be subjected to such fine and imprisonment as is provided by the statutes of this state for the crime of forgery.

## 329.250. Violation of law—penalty

Any person who shall act in any capacity other than by demonstration to or before license cosmetologists, or maintain any business wherein a certificate of registration is required pursuant to this chapter, without a certificate of registration, or any person who shall violate any provision of this chapter is guilty of a class C misdemeanor.

## 334.610. License to practice required, exceptions—unauthorized use of titles prohibited.

Any person who holds himself out to be a professional physical therapist or a licensed physical therapist within this state and who, in fact, does not hold such license is guilty of a class B misdemeanor and, upon conviction, shall be punished as provided by law. Any person who, in any manner, represents himself as a physical therapist, or who uses in connection with his name the words or letters "physical therapist", "physiotherapist", "registered physical therapist", "P.T.", "Ph.T.", "P.T.T.", "R.P.T.", or any other letters, words, abbreviations or insignia, indicating or implying that he is a physical therapist without a valid existing license as a physical therapist issued to him pursuant to the provisions of this chapter, is guilty of a class B misdemeanor. Nothing in this chapter shall prohibit any person licensed or registered in this state under chapter 331, RSMo, or any other law from carrying out the practice for which he is duly licensed or registered; nor shall it prevent professional and semiprofessional teams, schools, YMCA clubs, athletic clubs and similar organizations from furnishing therapy services to their players and members. This section, also, shall not be construed so as to prohibit masseurs and masseuses from engaging in their practice not otherwise prohibited by law and provided they do not represent themselves as physical therapists.

The F.D.A. "Talk Paper" referenced above was a cautionary bulletin concerning the use of the neon laser which the evidence revealed respondent used in his practice.

■ In its complaint, appellant alleged that the "use of bio-stimulation" is not approved by the State Board of Chiropractic Examiners pursuant to 4 CSR 70–2.-030. The reading of 4 CSR 70–2.030 and the further reference to all evidence upon the record simply does not support the foregoing conclusion of appellant. It is noted that 4 CSR 70–2.030 contains the following language: "(D) Therapeutic exercise, muscle therapy, *reflex techniques,* postural and structural supports." (emphasis added)

Throughout the whole of the evidence, respondent described his use of the laser in conjunction with spinal manipulation and that the use of the laser was a *reflex technique.* This evidence was not refuted by appellant.

It is also noted that the evidence revealed that the use of the laser is a technique or procedure taught and approved by schools of chiropractic. This evidence also was not refuted by appellant.

The simple fact is that upon the whole of the evidence in this proceeding, appellant failed to sustain its burden of proof. Under the evidence, the use of the laser was described as *reflex technique.* The state regulation authorizes such procedure by chiropractors.

■ When § 331.010 is reviewed, it appears to limit the practice of chiropractic to "the science and art of examination, diagnosis, adjustment, manipulation and treatment of malpositioned articulations and structures of the body ..." § 331.010, RSMo Supp. 1982.

Appellant asserts that the practice of chiropractic is limited to, or is defined as, the "science and art of palpating and adjusting by hand the movable articulations of the human spinal column ..." as defined under § 331.010, RSMo 1978, and before amendment of § 331.010.

While appellant's assertion might be, in regard to human benefit and health, the safer and more appropriate limitation to be imposed upon the practice of chiropractic, appellant, in its urging of such a limitation, ignores its own state regulation which seemingly expands the practice of chiropractic well beyond both the 1978 statute and the 1982 amended version.

■ It is noted that rules duly promulgated pursuant to properly delegated authority have the force and effect of law. *Page Western, Inc. v. Community Fire Protection District of St. Louis County,* 636 S.W.2d 65, 68 (Mo. banc 1982); *Macalco, Inc. v. Gulf Insurance Co.,* 550 S.W.2d 883, 887 (Mo.App.1977). Four CSR 70–2.-030 supra is not challenged in this proceeding by either party so the reasonableness of said rule is not in issue. If it were in dispute, this court would then have to sustain said rule if it were found to be reasonable. *Garner v. Missouri Division of Family Services,* 591 S.W.2d 27, 28 (Mo. App.1979).

In addition, while appellant argues for the more limited definition of chiropractic, it acknowledges and supposedly supports additional and expanded techniques including the use of lasers being taught and developed in schools of chiropractic. So, in addition to having failed to carry its burden of proof that respondent, by his activities, engaged in the practice of medicine, appellant presents a paradoxical argument upon the entire issue of limitation as to the definition of the practice of chiropractic.

It should be noted that appellant offered absolutely no evidence to support its allegations that respondent engaged in the practice of cosmetology and/or physical therapy.

■ A word of caution is necessary at this point to prevent a misunderstanding of this court's opinion. This court, by its decision herein, does not pass upon the question of whether respondent's use of "laser bio-stimulation" is or should be an accepted procedure or technique utilized by chiropractors or anyone else. This decision sim-

ply turns upon appellant's failure to carry its burden of proof under its allegation that such technique is, under our statutory law, the practice of medicine, cosmetology, or physical therapy. This court does not endorse, and indeed is prohibited from endorsement of this procedure or technique or any other. It is not the role of this court to evaluate or endorse any such procedure or technique, but rather, this court's function is but to rule upon the legal issues which might arise relative to any dispute concerning any such techniques or procedures.

Appellant further contends that such activities engaged in by respondent were tantamount to illegal or criminal acts under § 334.250, RSMo Supp. 1982, § 334.610, RSMo Supp. 1982, and § 329.250, RSMo Supp. 1982.

It suffices to say that since appellant has failed to carry its burden of proof that respondent's activities constituted the practice of medicine, cosmetology, and/or physical therapy, respondent, under the evidence upon this record, could not be held criminally responsible under § 334.250, § 334.610, and/or § 329.250 supra.

■ Appellant further charged that respondent is guilty of fraud, deception, or misrepresentation to the public by the placement and continuation of the above advertisement in the Yellow Pages. There is simply no evidence which reveals that respondent intentionally sought to defraud, deceive, or misrepresent the techniques and procedures he employed to the general public. The advertisement itself is self-explanatory. The only evidence upon the record concerning the advertisement was supplied by respondent. There is no need to restate in detail the evidence, but rather, it suffices to state that respondent had been trained in the use of the laser by a recognized chiropractic authority, such technique is taught in chiropractic schools, appellant admits that such technique is taught in chiropractic schools, and respondent testified that such technique is a reflex technique used by him in conjunction with spinal manipulation.

The placement of the advertisement, as the evidence reveals, simply followed respondent's training in the technique, its adoption within his practice as a chiropractor, and his notice to the general public that he engaged in such technique and practice. There is no evidence upon the record to even suggest, let alone establish, any intent to defraud, deceive, or misrepresent anything to the general public by respondent. Appellant's argument that fraud, deception, and/or misrepresentation is revealed or can be inferred from the continuation of the advertisement after respondent discontinued this technique proves absolutely nothing as regards the elements of fraud, deception, or misrepresentation. Respondent testified that although the advertisement continued in the Yellow Pages, he did inquire in 1982 as to changing the advertisement and was advised that the advertisement could not be changed during the period in question. Respondent further testified that although requested to do so by patients, he did not perform any bust rejuvenation following the one occasion where he did so upon a former employee who volunteered to participate. The evidence further revealed that respondent ultimately discontinued the use of the laser entirely.

Under the facts and circumstances herein, and particularly upon the failure of appellant to introduce evidence of any intent to defraud, deceive, and/or misrepresent to the general public by respondent, it must be concluded that respondent did not intend or attempt to defraud, deceive, or misrepresent anything to anyone.

As noted above, it is not the prerogative of this court to comment or pass upon the value or the validity of the "laser biostimulation" technique, or any other technique for that matter, and such determination as to value, validity, and/or acceptability is, in fact, within the purview of appellant. Thus, if appellant seeks a greater limitation or more precise definition of any technique or procedure, then appellant should do so by and through proper legislative channels and/or promulgate and seek adoption of

more precise and definitive state regulations to implement our statutes. To be sure, it is perhaps an impossible task to adopt either statutes or rules which would cover every possible situation, but if appellant desires specificity regarding chiropractic procedures and practices, then appellant bears the responsibility to insure that both the statutes and rules pertaining thereto are of that caliber. In any instance, where, as herein, appellant seeks the discipline of any licensee or the interpretation of any rule and/or regulation, appellant, just as any other litigant in our courts, must carry its burden of proof upon the issues.

Two additional matters need to be discussed. Both direct themselves to the decision entered by the Administrative Hearing Commission, but neither affect the result reached by the Administrative Hearing Commission or this court.

First, the Commission concludes:

Assuming for the moment that Respondent's actions were outside the scope of chiropractic, that point is insufficient under the pleaded provision to render Respondent or his license subject to discipline. Rather, Petitioner must prove its allegation that Respondent "is guilty of any criminal action," meaning in this case practice of one or more of the three aforementioned professions. Only after such a finding could we consider whether Respondent's actions were outside the scope of the practice of chiropractic.

■ The foregoing conclusion is in error. It is not the burden of appellant herein to prove a licensee "is guilty of any criminal action." Rather, appellant must prove, upon sufficient evidence, that a licensee, by his conduct, has performed beyond the permissible scope of chiropractic and by virtue of such proof, thereby establish the fact that a licensee has engaged in the practice of medicine, cosmetology, and/or physical therapy or some other prohibited area from which criminal penalty as prescribed by our statutes follows. Appellant is not put upon any burden of proof to show a licensee has committed a criminal or illegal act, but rather, actions by a licensee which show the licensee to have engaged in any prohibited practice by statute is defined as illegal or criminal and by statute, carries the applicable penalty upon a conviction therefor. The appellant's task is, upon its proof, to establish that a licensee has engaged in prohibited acts which fall outside the scope of chiropractic and perhaps by virtue thereof, fall into some other category of defined practice such as medicine, cosmetology, and/or physical therapy. The Commission then, as fact finder, must rule whether the evidence of appellant proves a licensee has, in fact, committed some act outside the scope of chiropractic.

■ On another note, the conclusions of the Commission appear to suggest that in the determination of issues such as are presented herein, that medical testimony is required. Such is not the case. There is nothing that prohibits the Commission from receiving expert testimony, but also there is nothing which requires such testimony. The Commission, as the trier of fact, bears the responsibility of determining issues presented to it. In the case of whether the actions of a licensee fall outside the scope of chiropractic, such a matter is one of law to be determined by the Commission and while expert testimony, in the judgment of the Commission, might be helpful, it is not in any case required. The conclusion that the Commission was "unable to conclude that respondent's actions violated § 331.060, RSMo 1978 by falling within the scope of the professions of medicine, physical therapy or cosmetology," having been premised upon the necessity that expert testimony was required, is an erroneous conclusion.

The instant case simply reveals that appellant failed to establish by its proof that respondent's actions fell outside the scope of chiropractic and the Commission, under the facts and circumstances, could have herein based its ruling upon that alone. Indeed, such is the finding of this court. It was, however, error for the Commission to conclude further its inability to determine whether respondent herein engaged in the

practice of medicine, cosmetology, and/or physical therapy because the Commission erroneously concluded that expert testimony was requisite. Such testimony is not required and the Commission is in error in so deciding. The Commission is charged with deciding the issues involving licensees upon the evidence presented to it and in the particular or instant case was required to determine the scope of respondent's activities as a matter of law and not to prescribe the type or form of evidence (i.e., expert testimony) to be introduced. As noted previously, the Commission is at liberty to receive expert testimony but is not at liberty to avoid its responsibility in rendering its decisions in the absence of such evidence, nor to prescribe that such evidence be introduced. The consideration of respondent's activities as to whether they were within or beyond the scope of chiropractic is a question of law which is the task of the Commission to determine. *See Sermchief v. Gonzales,* 660 S.W.2d 683 (Mo. banc 1983).

The judgment of the circuit court previously affirming the decision of the Administrative Hearing Commission is, upon and for the reasons set forth herein, affirmed.

All concur.